Good morning, Your Honors. On behalf of Petitioner Jitender Singh, Gaurish Sareen, I would request at least two minutes in rebuttal. And I will do my best to try to help you with that, but ultimately you'll be responsible for your time here. Thank you very much, Anna. This is a clear example of where the REAL ID Act is used to dispose of a legitimate case where an individual with just 10th grade rural education tried to provide the court with sworn statements, corroboration, and country conditions that he was singled out for harm due to his Sikh religion. He was viciously beaten. The doctor asked for proof from an American doctor to verify his stitches, which he did. All of his evidence was ignored, and the court and counsel for the government lasered in on what they believed were evasive testimony and inconsistent testimonies which aren't borne out by the record. They alleged wrong dates in their decisions, which the Board of Immigration Appeals stated for the judge it was harmless error, and then it went on to state its own wrong dates. And any other court might just vacate it on the wrong dates that they're alleging. Mike Klein testified to two serious incidents where he was brutalized on August 15, 2010, and in 2011, and he received no protection from the Indian police. He verified that, he showed that, and he provided a statement from his grandfather as well that the Indian police refused to protect him when appointed rifle after he was hit with the butt and threatened with death. The Indian police refused to protect him. None of those facts were given any weight. Well, the IJ and the board pointed to, I think, what, two, three specific instances where they found that your client was not credible, right? They made three allegations. That is correct, Your Honor. Well, three findings, but what is your response to those specific findings? They're not substantiated by the record, and they're not borne out. For example, my client stated he was exercising in his house, and it was within the borders of his house, and there was an open area. And they said that's an inconsistency. How can there be an open area? He's got to be outside. Well, unfortunately, all houses aren't built the same in the United States as they're built in rural areas in Punjab, and he stated he was exercising within the boundaries of his home. He was very clear on that. That is not an inconsistency. He then stated he lost consciousness, which he changed to semi-consciousness, and in his application he states he was dazed. Now, that could be interpreted. I'm curious. Why do you believe this inconsistency regarding dazed versus unconscious is due to the translation? Why do I believe the dazed unconsciousness? Well, because I think you say, you know, in your brief that you think it's a result of a translation issue, and I was just curious, were there translation issues throughout this proceeding, or what was happening? Yes, Your Honor, that's normal. When you have these hearings, a court-certified interpreter is trying his best, and unfortunately, you make mistakes. The interpreter admits he made wrong translation dates. He admits to the court he stated a date of 2016 when it wasn't correct, and it's his grammatical mistakes he makes when he states. He says, no, it was with my grandfather. Then counsel asks him, what do you mean no? As if that's an inconsistency. He never said no. He translated it was primarily him and his grandfather, and that came with the statement, and then counsel pounces on him. These are not really evasive answers. These aren't inconsistencies. If you want to be fair, you take it into the context that provided and given. And none of the allegations of any inconsistencies can be borne out. But here we have to give strong deference, if you agree, to the IJ's evaluation of a Petitioner's demeanor while testifying. How do we — how do you address the strong deference that we have to give the immigration judge here on these credibility issues? Follow the law. And if he doesn't follow the law and if the board doesn't follow the law, you can't uphold it. He didn't follow the law. He's got to look at the totality of the circumstances. He has to look at the total record. Sotomayor, and what was it in the record that you think that he didn't look at? Well, what they did is they avoided looking at the record. My client received stitches for his back, and he says, go get a doctor in the United States to verify it. He did. He didn't look at it. He then lays it in, as the judge just stated, on the issue of was he dazed, was he semi-conscious, or was he unconscious. Now, those are three different translations. The point is they're consistent. He was knocked out, whether he's dazed, whether he's semi-conscious or conscious is not an issue for us to state. The point is he was seriously injured, requiring stitches. And that's not what they're looking at. They're looking at to avoid the medicals, to avoid the medical record. That's another issue. On evasiveness, you have to have at least some demeanor. You have to have some examples. There isn't a single example. I can state over here, I don't like certain people's demeanor, but they should be based on the record. Nothing on it, nothing is based on the record, if you look at the record. So you should give deference if it's based on the record. Over here, the Indian police did not protect my client. They protected his persecutors. My client was struck with a rifle, threatened with death, beaten to a pulp, because he did not join this individual's religious group, who was a very powerful individual at that time. And we provided background material to verify that. You want to save the balance of your time? Thank you very much. Good morning. John Williams on behalf of the government. This is an immigration case where the immigration judge found that the petitioner denied the asylum application and all related relief because the petitioner lacked credibility. Indeed, the board affirmed the immigration judge's determination that the petitioner lacked credibility. The agency cited specific and cogent reasons, including several inconsistencies, two of which are unchallenged by the petitioner. First was the grandfather, the dates that the grandfather was threatened. Petitioner testified that the grandfather was first threatened on August 15, 2010. However, in his declaration, he indicates that the grandfather was threatened beginning in February 2008. I thought he didn't really give a date when the threats occurred in the affidavit. He states in his declaration at administrative record 348 that on February 2, 2008, my grandfather began to receive threats. I know. That's what the petitioner stated in his declaration attached to his asylum application. What was the date that the grandfather received threats? Beginning February 2, 2008, he starts that paragraph off stating on February 2, 2008, the disciples of Rahim and his entourage were victims of a terrorism attack. He goes on to state in that second paragraph, my grandfather began to receive threats from members and supporters of Rahim. Yeah, but is that necessarily tied to the 2008 date? I mean, the inference is that it's tied to that date. But it's in the second paragraph, isn't it? It is. Okay. Well, that's one inference, but it's not the only reasonable inference, is it? I mean, given from, as Judge Murgia says, you know, the separation into different paragraphs, there's no date stated on the second paragraph? Well, he starts off following that paragraph. He then goes on August 15, 2010, and he gets into that first assault of himself. But there are additional inconsistencies. Let's look at the second inconsistency. Sure. Thank you, Your Honor. And that is the difference between left dazed on the ground and left unconscious or semi-unconscious. Is that really a significant inconsistency? That is a significant inconsistency. Tell me why. Because this is the one incident where the beginning where he's indicating that he was injured. And he states that he testified that he was knocked unconscious. However, his declaration indicates that he was dazed. This is a significant incident in his life, and yet he's indicating in the declaration that he was dazed. Now, he failed to exhaust this inconsistency before the board. He did not raise any challenge to this inconsistency. So this court does not need to focus on that because it doesn't have jurisdiction  Let's talk about the hospital records. How can we say that the immigration judge considered the totality of the circumstances where he didn't mention the hospital records? Well, the immigration judge doesn't have to mention specifically every article of the record. That's fair, but you have to look at everything in context. And here it seems that the hospital records were the strongest corroborating documentary evidence that Mr. Singh submitted. So I'm not quite sure I understand how the IJ or the BIA decision did not mention the hospital records. Well, I believe that the IJ did, and he referenced the fact that Can you show me where? The site to the ER record? I don't have the site in front of me for that specific piece. Just assume with me that he didn't because I didn't see it, but maybe I missed it. But just assume for me for a moment that he didn't. Can you explain how that is taking into account the totality of the circumstances? It's a fair statement what you say that IJ doesn't always have to mention hospital records. I understand that, but in this case it seems like they were significant. Well, they were. And so he mentioned the immigration judge referenced that there were documents that were written in English, and he questioned how they were written in English. Was that the hospital records? It was, yes, one of the documents. But taking the totality, looking at the totality of the inconsistencies in the evidence and the fact that when you look at the third inconsistency, when we go to the police report, which, again, was unchallenged. Let's talk about that because would you agree that the IJ cannot rely on an inconsistency to discredit an applicant's credibility unless the applicant is given an opportunity to explain the inconsistency? In this instance. I'm just asking just a general principle. General principle. That's true, right? I mean, the IJ has to give an opportunity to explain the inconsistency. Yes. Okay. And so my specific question to you was, Mr. Singh ever given an opportunity to explain why he did not mention the August 10, because you just mentioned the police report, why he did not mention the August 10 police report in his declaration? I don't see that being raised anywhere in the transcript. Well, and this was an instance where the petitioner did not challenge that inconsistency. He waived that in his opening brief. You just mentioned it right now. As an inconsistency, yes. How about? Well, he testified, and he was asked by his own counsel. So you have a vase of testimony where he was asked by his own attorney. The other area I wanted to ask you about is the inconsistency regarding whether Mr. Singh's grandfather received threats before the August 2010 attack. Did Mr. Singh have an opportunity to explain that? I didn't see it, but maybe you can point it to me. Well, during questioning by his attorney and on cross-examination, he was asked and questioned. We're on cross-examination. If you could cite to the record. Yes, administrative record, page 172. He was questioned about the date when his grandfather was first threatened, and he was evasive about those questions. More to the point, he was asked, in addition about following the attack on August 15, 2010, who took him to the hospital by his own attorney, and he was evasive about that. He stated that some unknown person. His counsel asked him again, who took you to the hospital, and he repeated, an unknown person. Going to his injuries, his own attorney asked him, how long were you in the hospital? And he was evasive about telling his own attorney how long he was in the hospital. He was asked by his own attorney at administrative record 156, did you report the first assault to the police? And he was evasive. He stated they would not take the report. Upon further questioning by his own attorney, he then stated, yes, the police did take the report. So by his own attorney, the inconsistency regarding the police report, where he made no mention in the declaration, his own attorney asked him about those questions, and he was evasive about answering those questions. Those are just a few of the many evasive moments that are listed by the immigration judge throughout the decision in support of their decision. And I see my time is winding down. The immigration judge gave a long litany of instances where this petitioner was not cooperative. He was evasive during his testimony. And the board looked at the totality of the circumstances. The petitioner has not presented compelling evidence to overturn the agency's decision. Substantial evidence record does support the agency's decision. And I would ask that this court deny the petition for review. Thank you. Thank you. Your Honors, that's exactly what happened during the BIA, and that's what exactly happened with the IJ, nonresponsive answers. Let's look at his first answer. His first answer, you asked him, counsel for the government, specifically on the medical. He says it was waived. It was waived. It wasn't raised. Please go to transcript 00016, page 3 of my brief. It's raised. Consciousness is raised. It's central over there in his brief. It wasn't avoided. You specifically asked him about the police report. He didn't answer it. He didn't answer the issue of the police report. He then started mentioning facts of the grandfather. That is not a fair hearing. An omission has to be, have some bearing to consistency. He couldn't give you one example. My client stated the Indian police did not protect him. He made it a central issue of his case. Counsel never addressed that and said, well, he said he went to the police and then he was evasive because a report. There wasn't a report. There's never been a report. The Indian police refused to protect him. That's what he said throughout his case. That's what the government, U.S. Department of State documents prove. No one answer did he answer, Your Honor, to any of these issues. That's not a fair hearing. And you asked him a due process question. Was my client given an opportunity to respond? He never answered it because he wasn't. Well, he said on cross-examination he was. Well, that's not the law. The law is if the judge is raising an issue, he must give my client an opportunity of notice of what he believes is an inconsistency. On cross-examination, counsel is a professional to basically make up into an inconsistency, and that's what she's doing. Mr. Williams also said that there were a couple of inconsistencies that the IJ found that you don't challenge. Do you agree with that? That is completely incorrect. I was just raising that right now, Your Honor. That's on my brief. I just raised it. He said the first issue was on the semi-consciousness, consciousness. It's on page 3 of my brief. Every single issue we raised, every single issue that counsel raised is not supported by the record. It's not based on substantial evidence. It's not based on any evidence. Sir, with regard to the hospital records, the suggestion was made, I believe, that the IJ in fact referred to the records in some way, shape, or form, perhaps when he mentioned a document prepared in English. Could you please clarify what the record reflects with regard to the hospital records? Did the IJ refer to the hospital records directly or indirectly? Your Honor, let's raise the issue of English. It's common sense. Anybody would know that India was ruled by the British. English is the major language in that country. Every official document is in English. They're trying to say my client is speaking English. My client doesn't speak English. The doctor spoke English. Those are contemporary records. That is, again, lasering on an inconsistency when there is no inconsistency. A medical doctor prepared a letter in English at the time he was injured so he could go get prescriptive drugs. That doesn't mean my client speaks English. Thank you. Time's up. Do we have any other questions? No. All right. Thank you very much. Thank you both, Mr. Sarra and Mr. Williams, for your oral argument presentations here today. The matter and case of Singh v. Jefferson v. Sessions is submitted.
judges: Tashima, Murguia, Chatigny